UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL FRENCH, on behalf of himself and all others similarly situated current and former employees of First Transit, Inc.,<br><br>          Plaintiffs,<br><br>v.<br><br>FIRST TRANSIT, INC.,<br><br>          Defendant. | Case No.: 18-CV-1648-CAB-MSB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT and MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATIVE FEES, AND SERVICE AWARDS**<br><br>**[Doc. No. 51]** |

This matter is before the Court on the Plaintiffs' unopposed motion for final approval of class action settlement and motion for attorneys' fees, costs, administrative fees and service awards [Doc. No. 51]. The Court held a telephonic hearing on these motions on April 13, 2020.[1] Sheldon A. Ostroff, Esq. and Abbey M. Jahnke, Esq., appeared for Plaintiffs. David Dow, Esq. and Matthew B. Riley, Esq., appeared for Defendant. As discussed below, the motion for final approval of the class action settlement and the motion for attorneys' fees, costs, administrative fees, and service awards are granted.

---

[1] Due to the current COVID-19 national health emergency, all civil matters are being handled by telephonic appearances. Order of the Chief Judge, No. 18-A. Notice was provided to the public of the telephonic procedures at Doc. Nos. 52 and 53.

# BACKGROUND

This case involves California labor law violation claims against Defendant, First Transit Inc., a paratransit transport company. Plaintiffs' claims flow from the following nucleus of factual allegations:

- Plaintiffs and all other para-transit bus drivers have been forced by Defendant to work four-hour increments without being provided with a lawful ten-minute rest period.
- Defendant has failed to comply with IWC Wage Order 9-2001(7) and Labor Code section 226(a) by failing to maintain accurate time records.
- Defendant willfully failed to pay all wages earned by Plaintiffs and the class at the time of discharge.

Based on those factual issues, named Plaintiff Cecil French brought suit against Defendant in 2018, alleging the following causes of action: (1) failure to provide uninterrupted rest periods; (2) failure to provide accurate itemized wage statements; and (3) unlawful business practices.

Plaintiff Cecil French originally filed this action in the Superior Court of California on May 2, 2018. [Doc. No. 1-2.] On July 19, 2018, Defendant removed the action to this Court. [Doc. No. 1.] On April 12, 2019, the parties filed a joint motion for leave to file a first amended complaint ("FAC") to include an additional named Plaintiff, Kathleen Breisacher. [Doc. No. 22.] On April 17, 2019, the Court granted leave [Doc. No. 23] and Plaintiffs filed the FAC on that same day. [Doc. No. 25.] On August 23, 2019, the parties filed a notice of settlement. [Doc. No. 33.] On September 10, 2019, the parties filed a joint motion for leave to file a second amended complaint ("SAC") to add a cause of action under the California Private Attorney General Act, California Labor Code sections 2698, *et seq*. ("PAGA"), for settlement purposes. [Doc. No. 35.] The Court granted leave [Doc. No. 36], and Plaintiffs filed the SAC that same day. [Doc. No. 37.]

On November 26, 2019, the parties filed a motion for preliminary approval of the proposed settlement and the proposed notice of settlement to class members ("Notice").

[Doc. No. 46.] On December 6, 2019, the Court issued an Order preliminarily approving class settlement and approved the proposed Notice. [Doc. No. 48.] The Final Approval Hearing was set for April 13, 2020, at 2:00 p.m. [Doc. No. 50]

Currently before the Court is the Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, Administrative Fees, and Service Awards [Doc. No. 51.]

## OVERVIEW OF THE SETTLEMENT

### A. Class Definition.

The proposed class consists of First Transit, Inc.'s non-exempt employees who drove para-transit bus routes out of its San Diego, California location during the period of May 2, 2014, through December 6, 2019. [Doc. No. 51-2 at 11; Doc. No. 51-5 at ¶¶ 2.3, 2.10.]

### B. Settlement Terms.

Under the proposed Settlement, the claims of all Class Members who did not timely request exclusion from the Settlement shall be settled for the Maximum Settlement Amount of two million five hundred thousand dollars ($2,500,000.00). [Doc. No. 51-5 at ¶ 2.21.] This Maximum Settlement Amount shall include: (1) all Individual Settlement Payments to Participating Class Members and all related employer - and employee-side tax obligations; (2) the Class Counsel Costs Award; (3) the Class Counsel Fees Award; (4) all Service Awards to the Named Plaintiffs; (5) the PAGA Award to the Labor and Workforce Development Agency ("LWDA"); and (6) all Settlement Administration Costs. The Maximum Settlement Amount shall be allocated as follows:

**1. Individual Settlement Payments.**

The Net Distribution Fund[2] approximates One Million Seven Hundred Forty-Seven Thousand Three Hundred Fifty-Eight Dollars and Thirty Cents ($1,747,358.30). Class

---

[2] The Net Distribution Fund is the amount remaining after subtracting Class Counsels' attorneys' fees and costs, Service Awards, PAGA Penalties, and Settlement Administration Costs.

members are not required to file a claim to receive an Individual Settlement Payment. The Individual Settlement Payments will be computed for each Participating Class Member by multiplying the number of Compensable Workweeks he/she worked during the Class Period by the work week valuation.

**2. LWDA Payment.**

Subject to the Court's approval, one hundred thousand dollars ($100,000.00) from the Maximum Settlement Amount shall be allocated to penalties under the Private Attorneys General Act ("PAGA"). Of this amount, seventy-five percent (75%), or seventy-five thousand dollars ($75,000.00) is to be paid directly to the LWDA. The remaining twenty-five thousand dollars ($25,000.00) is allocated to the aggrieved employees and, pursuant to the Settlement, is included in the Net Distribution Fund. [Doc. No. 51-5 at ¶ 3.9.]

**3. Class Counsel Fees and Expenses.**

Subject to Court approval, Defendant agreed not to oppose Class Counsel seeking up to twenty-five percent (25%) or Six Hundred Twenty-Five Thousand Dollars and Zero Cents ($625,000.00) of the Maximum Settlement Amount for attorneys' fees and up to Fifty Thousand Dollars and Zero Cents ($50,000.00) for reimbursement of Class Counsel's costs in prosecuting this matter. [*Id*. at ¶¶ 3.3, 3.4.] In the motion, Class Counsel seek $32,641.71 in costs.

**4. Class Representative Incentive Award.**

Subject to Court approval, in exchange for release of their claims, and in recognition of the time and effort in litigating this matter, Plaintiffs shall be entitled to payment of a Class Representative Incentive Award up to and not to exceed five thousand dollars ($5,000.00) each.

**5. Claims Administration Costs.**

Claims Administration Costs, in an amount not to exceed Twenty Thousand Dollars and Zero Cents ($20,000.00), shall be paid to the Claims Administrator from the Maximum Settlement Amount. In the motion, administration costs sought are $15,000.

**6. Taxes.**

All Individual Settlement Payments paid to Participating Class Members will be paid in a net amount after deducting that individual's applicable state and federal tax withholdings, applicable payroll deductions, any other deductions required by state and local law, and social security withholdings, and any employer-side payroll taxes owed.

7. **Release**

Upon final approval of the Settlement Agreement, Class Members who have not opted out of the settlement will be barred from bringing any cause of action or asserting any claim for unpaid wages or penalties during the Class Period. Named Plaintiffs have consented to a general release of any and all claims arising during the Class Period.

**C. Notice to Class Members**

Pursuant to the Preliminary Approval Order, the Class Notice described the lawsuit and settlement, instructed Class Members how to participate in or opt-out of the settlement, instructed Class members how to object to the settlement, provided details on the final approval hearing and contact information for class counsel, and instructed Class Members how to obtain court records.

The Settlement Administrator, American Legal Claim Services, LLC ("ALCS"), was responsible for preparing and mailing the Class Notice. First Transit provided ALCS with the last known address for each Settlement Class Member. The Settlement Administrator used various processes and search engine databases to update Settlement Class Members' addresses.

On December 27, 2019, ALCS mailed the Class Notice to 560 Settlement Class Members. Fifty-Nine (59) Class Notices were returned to ALCS by the United States Postal Service. ALCS performed address traces and mailed out new Class Notices; ultimately, 25 Class notices were undeliverable. ALCS and Class Counsel have not received any requests from Settlement Class Members to be excluded from the settlement. Moreover, ALCS and Class Counsel have not received any objections to the settlement.

The Court finds that this notice procedure afforded adequate protections to Class

Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Class Members. The Court finds and determines that the notice provided in this case was the best practicable, which sufficiently satisfied the requirements of law and due process. Finally, the Court **APPROVES** the Settlement Administration costs in the amount of **$15,000.00** as reasonable.

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### 1. Legal Standard.

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other forms of complex

litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**2. Analysis.**

**A. Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiffs contend they have a strong case that was appropriately settled for $2.5 million. [Doc. No. 51-2 at 17.] While Plaintiffs strongly believe in the case, the risk of continued litigation of the issues in their case could have significantly reduced their damages. *Id.* Therefore, this factor weighs in favor of approving the settlement.

**B. The Risk of Maintaining Class Action Status Through Trial.**

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving

the settlement).

Plaintiffs contend that although they do not foresee any direct risk to certifying a class and maintaining certification through trial, by reaching a favorable settlement prior to a motion for certification they avoid significant expense and delay. [Doc. No. 51-2 at 19.] Therefore, this factor weighs in favor of approving the settlement.

### C. The Stage of the Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (*quoting In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Based on the parties' representations, it appears that the Settlement Agreement resulted from arms-length negotiations and was not the result of collusion. The parties negotiated the proposed Settlement at arm's length with the assistance of an experienced mediator, Joel Grossman, Esq. As part of the discovery process, First Transit provided Class Counsel with hundreds of pages of documents containing thousands of data entries regarding the Named Plaintiffs' and Settlement Class Members' manifests; timing, accrual, usage, and forfeiture of rest breaks; payment roll records; and payment of additional wages when rest breaks were not provided in accordance with California law. Class Counsel also spent a considerable amount of time interviewing witnesses, conferring with co-counsel, preparing to take depositions, and preparing a draft class certification motion and draft joint motion to resolve discovery disputes. Plaintiffs and Class Counsel had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is fair, adequate, and reasonable. Therefore, this factor weighs in favor of approving the settlement.

### D. The Settlement Amount.

"In assessing the consideration obtained by the class members in a class action

settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV,* 221 F.R.D. at 527 (internal citation and quotation marks omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (citations omitted).

Here, the Maximum Settlement Amount is $2,500,000.00, with a Net Distribution Fund of at least $1,747,358.30 available to pay Class Members. The average estimated payment is $3,080.50. Plaintiffs contend that the settlement amount is reasonable when balanced against the strengths and weaknesses of Plaintiffs' claims:

"Although Named Plaintiffs believe this case had merits, Named Plaintiffs realize they had a long and arduous road before them that was fraught with risk. After deducting Named Plaintiffs' Service Awards, attorneys' fees, expenses, and costs of administration, the Net Distribution Amount remaining is $1,747,358.30. This amount represents approximately thirty-five percent (35%) of the maximum amount of damages recoverable under Named Plaintiffs' theory of the case." [Doc. No. 51-2 at 25.]

Thus, this factor favors approval.

### E. Fair and Adequate Representation During Settlement Negotiations.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). Class Counsel assert that their significant, collective trial and class action litigation experience supports Final Approval. Mr. Ostroff has more than twenty-seven (27) years of experience litigating class and representative actions involving California labor law and I.W.C Wage Orders, many of which involved failure to provide rest periods in accordance with California law. Moreover, based on Class Counsel's extensive experience, they have collectively and without reservation concluded that this settlement is fair, reasonable and adequate. Accordingly, this factor weighs in

favor of approval of the settlement.

## F. Class Reaction to the Proposed Settlement.

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not file an opposition).

To date, no Settlement Class Member has objected to the settlement and no Settlement Class Member has excluded himself or herself from the settlement. Given the overall positive reaction from Settlement Class Members, this factor also favors final approval.

**3. Conclusion.**

Because the factors outlined above favor approving the Settlement, the Court **GRANTS** the motion and finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

**MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATIVE FEES, AND SERVICE AWARDS**

Plaintiffs seek attorneys' fees in the amount of $625,000, 25% of the $2,500,000 Maximum Settlement Amount, reimbursement of expenses in the amount of $32,641.71 to Class Counsel, Administrative Costs for ACLS of $15,000 and Class Representative Service Awards in the amount of $5,000 to each Plaintiff in this action. The uncontested motion is made on the following grounds:

**1. Attorneys' Fees**

Courts have an independent obligation to ensure that the amounts requested for attorneys' fees and any class representative service award, like the settlement, are

reasonable. *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have the discretion to employ a "percentage of recovery method." *Id*. at 942. Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award. *Id*. Injunctive relief should generally be excluded from the value of the common fund when calculating attorneys' fees because most often the value of the injunctive relief is not measurable. *Staton v. Boeing Co.*, 327 F.3d 938, 945–46 (9th Cir. 2003).

"The 25% benchmark rate, although a starting point for the analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Thus, courts are encouraged to cross-check this method by employing the "lodestar method" as well. *In re Bluetooth*, 654 F.3d at 949.

In the "lodestar method," the court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work. *In re Bluetooth*, 654 F.3d at 941. The hourly rate may be adjusted for the experience of the attorney. *Id*. "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The resulting amount is "presumptively reasonable." *In re Bluetooth,* 654 F.3d at 949. However, "the district court . . . should exclude from the initial fee calculation hours that were not 'reasonable expended.'" *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (*Hensley v. Eckerhart*, 401 U.S. 424, 433–34 (1983)). The court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in considerations, the benefit achieved for the class. *In re Bluetooth*, 654 F.3d at 942.

Here, the Court notes that the settlement amount is an exceptional amount with a significant average payout. After deducting Named Plaintiffs' Service Awards, attorneys' fees, expenses, and costs of administration, the Net Distribution Amount remaining is

$1,747,358.30. This amount represents approximately thirty-five percent (35%) of the maximum amount of damages recoverable under Named Plaintiffs' theory of the case. The Class Members will receive an average Settlement Payment of $3,080.50. Therefore, the Court **APPROVES** attorneys' fees in the amount of **$625,000.00.**

### 2. Litigation and Administrative Expenses.

Class Counsel seek reimbursement of their costs in the amount of $32,641.71. Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Pursuant to the Settlement Agreement, Class Counsel may seek reimbursement of reasonable costs in an amount not to exceed $50,000. Here, Class Counsel's costs were only $32,641.71, which includes court fees, service costs, expert costs, the cost of class notice, and travel-related expenses. Accordingly, because Class Counsel's out-of-pocket expenses were reasonably incurred in connection with the prosecution of this litigation and were advanced by Class Counsel for the benefit of the Class, the Court **APPROVES** costs in the amount of **$32,641.71**. As stated previously above, the Court also **APPROVES** administrative expenses for ACLS of **$15,000.00.**

### 2. Class Representative Service Awards.

Plaintiffs Cecil French and Kathleen Breisacher each seek a class representative service award of $5,000. "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[ ]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Nonetheless, the court has an obligation to assure that the amount requested is fair. *In re Bluetooth*, 654 F.3d at 941. "The propriety of incentive payments

is arguably at its height when the award represents a fraction of the class representative's likely damages . . . But we should be more dubious of incentive payments when they make the class representative whole, or (as here) even more than whole." *In re Dry Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

Here, Named Plaintiffs met with Class Counsel on several occasions to discuss the claims asserted; attempted to locate witnesses and provided all documentation, including pay stubs and employee handbooks, which they received during the tenure of their employment with First Transit to Class Counsel; reviewed and approved the complaints and Settlement Agreement; assisted Class Counsel with the preparation of written discovery propounded to First Transit; arranged telephone conversations between Class Counsel and other First Transit employee witnesses; and responded to telephone and e-mail inquiries made by Class Counsel during the pendency of this action. Accordingly, the Court **APPROVES** a service award of **$5,000.00** to each Named Plaintiff.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. The Court **GRANTS** Plaintiffs' motion for final approval of class action settlement pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, and that the settlement was entered into in good faith, and that Plaintiffs have satisfied the standards for final approval of a class action Settlement under federal law.

2. The Court **APPROVES** the Claims Administration costs in the amount **$15,000.00**.

3. The Court **APPROVES** the LWDA payment and employer taxes payment pursuant to the terms of the Settlement Agreement.

4. The Court **GRANTS** Plaintiffs' motion for attorneys' fees and costs and class representative service awards as follows:

    a. The Court **APPROVES** Plaintiffs' request for an award of attorneys'

fees in the amount of **$625,000.00**.

  b. The Court **APPROVES** the requested costs in the amount of **$32,641.71**.

  c. The Court **APPROVES** class representative service awards of **$5,000.00**.

5. Plaintiffs' counsel shall submit a proposed judgment for the Court's review and execution no later than **April 20, 2020**.

It is **SO ORDERED**.

Dated: April 13, 2020

                _____
                Hon. Cathy Ann Bencivengo
                United States District Judge